# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 22-0493V

|  |  |
|---|---|
| LINDSAY A. MACK,<br><br>                    Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                    Respondent. | Chief Special Master Corcoran<br><br>Filed: April 22, 2026 |

*JohnDavid Toren, Menzer Law Firm, PLLC, Seattle, WA, for Petitioner.*

*Eleanor Hanson, U.S. Department of Justice, Washington, DC, for Respondent.*

### FINDINGS OF FACT AND RULING ON ENTITLEMENT[1]

On May 4, 2022, Lindsay A. Mack filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a left shoulder injury related to vaccine administration ("SIRVA") from an influenza ("flu") vaccine received on May 6, 2019. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

As explained below, I find that the onset of Petitioner's pain more likely than not occurred within 48 hours of her vaccination, and that she has otherwise satisfied the

---

[1] Because this Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755.  Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

requirements of a Table SIRVA claim. Therefore, Petitioner is entitled to compensation under the Vaccine Act.

## I.    Relevant Procedural History

After the parties reached an impasse in their settlement discussions, Respondent filed a Rule 4(c) Report on October 9, 2024. ECF No. 34.  Respondent argues that Petitioner is not entitled to compensation because the "most contemporaneous medical records fail to demonstrate that the onset of her alleged shoulder pain was within forty-eight hours of her flu vaccination." Rule 4(c) Report at 6. Petitioner then filed a Motion for Ruling on the Record ("Mot.") on February 10, 2025. ECF No. 38. Respondent filed a response ("Resp.") on April 24, 2025, and Petitioner filed a reply ("Repl.") on May 22, 2025. ECF No. 40 and 42.

The matter is now ripe for adjudication.

## II.    Relevant Facts

### A.  Medical Records

On May 6, 2019, Petitioner (a dentist) received a flu vaccine in her left arm. Ex. 2 at 1. Almost a month later, on June 3, 2019, she reached out to her employer via email to report that it had "been 4 weeks since [she] got the flu shot and [she was] still having pain in [her] arm." Ex. 8 at 2. She was advised to see her primary care provider ("PCP"). *Id*. at 1-2.

On September 9, 2019 (now four months after vaccination) Petitioner saw her PCP for left shoulder pain. Ex. 5 at 7. She reported that she received a vaccine in May, and that her left shoulder "hurts still." *Id.* On exam, she had full range of motion, but "impingement in internal rotation" and "tenderness along the GH joint line." *Id.* at 9. She was diagnosed with bursitis[3] and prescribed a 10-day course of prednisone. *Id.*

On October 17, 2019, Petitioner's employer requested additional information about her injury, which Petitioner provided by email. Ex. 9. She stated that the injection itself was "quite painful," the "pain lasted longer than the usual 48 hours," and "wasn't just muscle soreness, it was sharp pain in the joint whenever [she lifted] her arm." *Id*. at 1-2. She stated that when the pain did not resolve, she saw her PCP and intended to see an orthopedist on October 22. *Id*. at 2.

---

[3] The record states bursitis of the right shoulder which is believed by both parties to be a typographical error. *See* Mot. at fn.1; Resp. at fn.1; Ex. 11 at ¶6.

On October 22, 2019, Petitioner saw an orthopedist, who noted that her shoulder pain began "5 months ago" and "came about following vaccination for the flu back in May 2019." Ex. 3 at 34. She reported that "since the injection she [has] had pain in the shoulder" which restricted her activities on a daily basis. *Id.* Petitioner's exam revealed that range of motion was "nearly full but somewhat restricted with internal rotation on the left," strength was not diminished, and impingement signs were "somewhat positive." *Id.* at 36. X-rays were normal. *Id.* at 37. Petitioner was diagnosed with tendinitis of the left rotator cuff and "very mild adhesive capsulitis." *Id.* She was instructed to increase her dosage of Celebrex,[4] advised to use Tylenol and diclofenac gel for pain, and referred to physical therapy. *Id.*

On November 5, 2019, Petitioner began physical therapy. Ex. 6 at 15. The record notes the date of injury as May 7, 2019 and the diagnosis of "unspecified complication following infusion and therapeutic injection." *Id.* Petitioner attended a total of 12 sessions through January 8, 2020. *Id.* at 15-26. At the final session, she reported no change in symptoms "up to this point," but was "ready to transition to [home exercise program] only." *Id.* at 26.

Petitioner's orthopedist ordered an MRI during an appointment on November 12, 2019. Ex. 3 at 33. The MRI revealed a full thickness tear "at the junction of the supraspinatus and infraspinatus tendons." *Id*. at 39.

On January 28, 2020, Petitioner returned to her orthopedist for a follow up for left shoulder pain. Ex. 3 at 26. The record notes that "onset was on 5/7/2019." *Id*. After consideration of the MRI results, Petitioner was referred to an orthopedic surgeon for a second opinion. *Id*. at 29.

On March 2, 2020, Petitioner met with an orthopedic surgeon for a second opinion regarding her ongoing left shoulder pain. Ex. 4 at 2. She reported that she "had a flu shot in May and began to develop increasing left shoulder pain." *Id.* On exam, Petitioner had "mild capsular stiffness" and slight pain with "supraspinatus activation." *Id.* at 8. The surgeon questioned whether the MRI images truly showed a tear rather than "some changes to the bony architecture at the insertion." *Id*. He discussed a diagnostic arthroscopy with possible rotator cuff repair, but did not recommend surgery as the best option based on her "relatively mild symptoms." *Id.* at 8. He advised her to continue conservative treatment. *Id.*

### B. Witness Testimony

Petitioner filed two affidavits in support of her claim. *See* Ex. 1, 11. In her first statement, she said that she felt "soreness and pain" in her left shoulder "immediately

---

[4] Petitioner's medical records show she was prescribed Celebrex in February 2019, prior to her vaccination. Ex. 5 at 7.

after the vaccine was administered." Ex. 1 at ¶3. In her second, she stated that she had "initially expected the pain to improve over time without treatment." Ex. 11 at ¶4. She also explained that she first reported her injury to her employer in June 2019 and was advised to see her PCP, but "waited another month to see if her symptoms would improve." *Id*. at ¶5.  When they did not, she sought treatment. *Id*. at ¶5-6.

Petitioner's husband, David Mack, also filed an affidavit at Exhibit 12. He recalled Petitioner complaining of shoulder pain "on the evening of the same day she received the flu shot," which then "persisted in the days, weeks and then months after the flu shot." Ex. 12 at ¶3. He recalled that "in the days immediately following the flu vaccine, [Petitioner] was unable to raise her arm or perform simple tasks involving her shoulder without pain." *Id.* at ¶4.

### III.    Applicable Legal Standards

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence.  The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs*., 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs*., No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. "Written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Murphy v. Sec'y of Health & Hum. Servs.*, No. 90-882V, 1991 WL 74931, *4 (Fed. Cl. Spec. Mstr. April 25, 1991), quoted with approval in decision denying review, 23 Cl. Ct. 726, 733 (1991), *aff'd per curiam*, 968 F.2d 1226 (Fed.Cir.1992)). And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that

happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such fact testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id*.

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

## IV.    Findings of Fact

Respondent argues that "Petitioner's most contemporaneous medical records fail to demonstrate that the onset of her alleged shoulder pain was within forty-eight hours of her flu vaccination." Resp. at 6. He highlights that Petitioner did not specifically state that her pain began with in 48 hours of her vaccination at her first two medical appointments for shoulder pain. *Id*. at 6-7. While Respondent acknowledges that there is other evidence of Table-consistent onset in the record, including emails and affidavits, he argues those "should be given little weight, if any." *Id*. at 7.

Petitioner consistently linked the onset of her shoulder pain with her vaccination on May 7, 2019. *See e.g.*, Ex. 3 at 26 (recorded "onset was on 5/7/2019"); Ex. 3 at 34 (reported that her shoulder pain "came about following vaccination for the flu back in May

2019" and that "since the injection she [has] had pain in the shoulder"); Ex. 5 at 7 (reported flu vaccination in May and that her shoulder "hurts still"); Ex. 6 at 15 (recorded date of injury as 5/7/2019). Although Petitioner did not specifically place the onset of her pain within 48 hours of her vaccination, it is common for medical records to contain similar general statements as to onset, which are then explained in sworn testimony that provides additional detail. *See e.g. Ogea v. Sec'y of Health & Human Servs.*, No. 22-0025V, 2025 WL 1752390 at *5 (Fed. Cl. Spec. Mstr. May 20, 2025) ("[T]he simple fact that she did not state a specific time of onset does not defeat her Table claim.").

It is appropriate that I evaluate contemporaneous records in conjunction with later-provided witness statements. I am obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993). Thus, it is reasonable to allow subsequent statements to add depth and shading to existing records, even if the latter are silent on the relevant disputed issue.

Here, Petitioner has provided additional evidence regarding the onset of her shoulder pain that is fully consistent with the objective medical records, but fleshes out the onset issue. She has provided emails with her employer in which she reported her shoulder pain, one of which clearly puts the onset of pain within 48 hours. *See* Ex. 8 at 2 (Less than one month after vaccination, Petitioner stated that it had "been 4 weeks since [she] got the flu shot and [she was] still having pain in [her] arm."); Ex. 9 at 1-2 (stated that the injection itself was "quite painful," the "pain lasted longer than the usual 48 hours," and "wasn't just muscle soreness, it was sharp pain in the joint whenever [she lifted] her arm."). The emails between Petitioner and her employer were created contemporaneously with her injury and treatment. Further, the affidavit testimony corroborates Petitioner's statements in the medical records of pain "since" the vaccination. *See* Ex. 1 at ¶3 (soreness and pain began immediately); Ex. 11 at ¶4 ((soreness and pain began immediately); Ex. 12 at ¶3 (Petitioner's husband recalled her complaining of pain the same day as her vaccination.). This supplementary evidence gives additional detail and context to the more general information recorded in the medical records, and is not contradictory. Finally, other than Petitioner's delay in seeking treatment, there is no evidence in this record (and Respondent does not suggest any) supporting the conclusion that onset of her pain began *more* than 48 hours post-vaccination.

Accordingly, I find there is preponderant evidence to establish the onset of Petitioner's pain occurred within 48 hours of vaccination.

## V.    Ruling on Entitlement

### A.    *Requirements for Table SIRVA*

I have found that Petitioner has preponderantly established that her pain began within 48 hours of her vaccination. 42 C.F.R. § 100.3(c)(10)(ii). Respondent has not contested Petitioner's proof on the remaining elements of a Table SIRVA. *See* 42 C.F.R. § 100.3(c)(10)(i),(iii-iv). Accordingly, I find that Petitioner has provided preponderant evidence to establish that she suffered a Table SIRVA injury.

### B.    *Additional Requirements for Entitlement*

Because Petitioner has satisfied the requirements of a Table SIRVA, she need not prove causation. Section 11(c)(1)(C). However, she must satisfy the other requirements of Section 11(c) regarding the vaccination received, the duration and severity of injury, and the lack of other award or settlement. Section 11(c)(A), (B), and (D).

The record shows that Petitioner received a flu vaccine on May 7, 2019 Ex. 2 at 1; Section 11(c)(1)(A) (requiring receipt of a covered vaccine). Petitioner has also clearly stated that she has not filed any civil action or received any compensation for her vaccine-related injury, and there is no evidence to the contrary. Ex. 1 at ¶8-9; Section 11(c)(1)(E) (lack of prior civil award). Finally, Petitioner's medical records reveal that she suffered the residual effects of her vaccine injury for more than six months, and Respondent does not argue otherwise. *See e.g.,* Ex. 3 at 26-29, 39; Ex. 4 at 2-8; Ex. 6 at 15-26; Section 11(c)(1)(D)(i) (statutory six-month requirement). Therefore, Petitioner has satisfied all requirements for entitlement under the Vaccine Act.

## Conclusion

**Based on the entire record in this case, I find that Petitioner has provided preponderant evidence satisfying all requirements for a Table SIRVA. Petitioner is entitled to compensation in this case. A separate damages order will be issued.**

**IT IS SO ORDERED.**

<u>**s/Brian H. Corcoran**</u>
Brian H. Corcoran
Chief Special Master